112 F.3d 1015
 97 Cal. Daily Op. Serv. 3196, 97 Daily Journal
D.A.R. 5585
Karen FINLEY; John Fleck; Holly Hughes; Tim Miller;
National Association of Artists' Organizations,
Plaintiffs-Appellees,
v.
NATIONAL ENDOWMENT FOR THE ARTS; Anne-Imelda Radice, in her
official capacity as Chairperson of the National
Endowment for the Arts, Defendants-Appellants.
Karen FINLEY; John Fleck; Holly Hughes; Tim Miller;
National Association of Artists' Organizations,
Plaintiffs-Appellees,
v.
NATIONAL ENDOWMENT FOR THE ARTS; Anne-Imelda Radice, in her
official capacity as Chairperson of the National
Endowment for the Arts, Defendants-Appellants.
Karen FINLEY; John Fleck; Holly Hughes; Tim Miller;
National Association of Artists' Organizations,
Plaintiffs-Appellees,
v.
NATIONAL ENDOWMENT FOR THE ARTS; Anne-Imelda Radice, in her
official capacity as Chairperson of the National
Endowment for the Arts, Defendants-Appellants.
 Nos. 92-56028, 92-56387 and 92-55089.
 United States Court of Appeals,
Ninth Circuit.
 May 1, 1997.
 
 Before BROWNING, FERGUSON, and KLEINFELD, Circuit Judges.
 
 ORDER
 
 1
 A majority of the panel has voted to deny the petition for rehearing and to reject the suggestion for rehearing en banc.
 
 
 2
 The full court has been advised of the suggestion for rehearing en banc. An active judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed.R.App.P. 35.
 
 
 3
 The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.
 
 
 4
 O'SCANNLAIN, Circuit Judge, joined by KOZINSKI and KLEINFELD, Circuit Judges, dissenting from order rejecting suggestion for rehearing en banc:
 
 
 5
 This case should be reheard en banc because our three judge panel split decision conflicts with two other circuits, is wrong on the merits, and turns the First Amendment on its head.
 
 
 6
 The plaintiffs are artists, who, along with 5,164 others, applied for a Visual Arts Fellowship from the National Endowment for the Arts ("NEA") in 1994. The plaintiffs weren't awarded fellowships (although 88 others were) so they sued, claiming that their First Amendment rights had been violated because Congress required the NEA, in addition to judging applications by "artistic excellence" and "artistic merit," to "tak[e] into consideration general standards of decency and respect for the diverse beliefs and values of the American public." 20 U.S.C. § 954(d). In ruling that the "decency and respect" provision offends the First Amendment, our divided court commits three grave errors.
 
 
 7
 First, the panel majority gave the NEA statute an implausible construction. According to the panel, rather than merely take "decency and respect" into consideration, as the statute says, the NEA must use "decency and respect" as the decisive criterion for awarding grants. Finley v. NEA, 100 F.3d 671, 680 (9th Cir.1996). There simply is no warrant for manufacturing such an imagined conflict with the First Amendment.[1]
 
 
 8
 The panel's second error aggravates the first by applying the "void for vagueness" doctrine where it does not belong, and without regard for the purposes underlying it. A vague law is not as dangerous when the government is handing out a prize instead of meting out a punishment. The "decency and respect" provision neither "trap[s] the innocent," nor "impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis." Grayned v. City of Rockford, 408 U.S. 104, 108-109, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972).
 
 
 9
 As the panel majority would have it, however, simply because the statute is vague and has something to do with speech, it must offend the First Amendment. See Finley, 100 F.3d at 679. In my view, this is wrong: a law must actually threaten or chill protected speech before we strike it down.
 
 
 10
 How does the "decency and respect" provision inhibit First Amendment rights? Tellingly, the majority doesn't say. It merely points to the heightened need for specific standards when a statute's provisions "touch upon speech." Finley, 100 F.3d at 679. The need "may be even greater when a statute subsidizes speech and the risk that the provision on its face will inhibit speech remains." Id. This confusing (and doubtful) statement utterly fails to explain how First Amendment liberties are threatened when the government awards a prize.
 
 
 11
 The majority might well have thought that a government award for certain types of art will subtly coerce artists to produce art of that type, thereby chilling creation of "other" art. Or it could have thought that artists cannot be denied a government benefit because they express themselves in a particular way, i.e., indecently. Neither theory fits here, however.
 
 
 12
 If the first argument were true, the government could never hand out awards for any specific type of art without chilling other artistic expression. Under such reasoning, it would be unconstitutional for the government to award a prize for the best performance of Mozart's "Magic Flute" because it might coerce opera companies across the nation to perform that opera in preference to another.
 
 
 13
 The second argument is equally problematic. The Supreme Court has repeatedly instructed that the First Amendment is not violated when Congress subsidizes some speech, but not all speech. Rust v. Sullivan, 500 U.S. 173, 193, 111 S.Ct. 1759, 1772, 114 L.Ed.2d 233 (1991); Regan v. Taxation with Representation of Wash., 461 U.S. 540, 549, 103 S.Ct. 1997, 2002-03, 76 L.Ed.2d 129 (1983); Harris v. McRae, 448 U.S. 297, 317 n. 19, 100 S.Ct. 2671, 2688 n. 19, 65 L.Ed.2d 784 (1980); Maher v. Roe, 432 U.S. 464, 475, 97 S.Ct. 2376, 2383, 53 L.Ed.2d 484 (1977); Buckley v. Valeo, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976). Moreover, Rosenberger v. Rector & Visitors of the Univ. of Virginia, 515 U.S. 819, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995), cannot be stretched to cover this case: the government benefit here is given out to a select few artists on the basis of the content of their expression. Rosenberger should not be read to apply to prizes.
 
 
 14
 The panel's third error comes in its alternate holding: that the statute is impermissible because it contains content-based and viewpoint-based restrictions. The panel applies standard First Amendment principles to a situation that the First Amendment doesn't cover. When the government awards a special prize to a select few artists, it necessarily will distinguish between the artists on the basis of the content of their speech. Indeed, content-based distinctions are the whole reason for NEA grants. Considerations of viewpoint are also a necessary element of the decision of whether art is "excellent" or meritorious. What art critic would contend that the subject matter of a work of art is irrelevant to deciding whether it is "excellent"? In any event, the terms "artistic excellence" and "artistic merit" are vague enough to allow an NEA official to consider an artist's viewpoint, but that doesn't bother the majority. It shouldn't, because the First Amendment does not prohibit that. Neither does the Amendment prohibit "taking into consideration general standards of decency and respect" when awarding a prize.
 
 
 15
 The majority's opinion does far more than give a hostile construction to a Congressional enactment in order to create a conflict with other circuits and Supreme Court precedent, and overturn a law. It sows the seeds of an imprudent First Amendment jurisprudence which will entangle and choke Congress' ability to control public funds used to sponsor any sort of free expression.
 
 
 16
 Because this case should have been reheard en banc, I respectfully dissent from the court's order not to do so.
 
 
 
 [1]
 The panel creates more than an imagined conflict with two of our sister circuits. See Piarowski v. Illinois Community College, 759 F.2d 625 (7th Cir.1985); Advocates for the Arts v. Thomson, 532 F.2d 792 (1st Cir.). cert. denied, 429 U.S. 894, 97 S.Ct. 254, 50 L.Ed.2d 177 (1976)